IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


TRINIDAD ARGUELLO,

    Plaintiff,

vs.                                                                           No. CIV 01-1374 MV/RHS

TAOS GROUP HOME, INC., d/b/a CASA
de CORAZON, a nonprofit corporation, and
MARGARET COHENOUR, individually,

    Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment and Memorandum in support thereof **[Doc. Nos. 25 & 26]**, filed October 7, 2002. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion will be **DENIED in part** and **GRANTED in part**.

### BACKGROUND

On or about May 2000, Plaintiff Trinidad Arguello began working as Clinical Director and Intake Coordinator at Defendant Casa de Corazon, a nonprofit corporation providing treatment and foster care services for abused children. Arguello alleges that in June 2000, Defendant Margaret Cohenour, CEO of Caza de Corazon, stated in a meeting that the "Mexican Mafia" was complete now that Arguello had been hired. Arguello confronted Cohenour about this comment, stating that it was unprofessional and inappropriate. Arguello claims that after this discussion, Cohenour increased her workload significantly, such as no other Clinical Director had been required to complete. When Arguello approached Cohenour about the increased workload,

Cohenour stated that Arguello was being unprofessional and insubordinate.

Arguello further contends that Cohenour treated other Hispanic employees differently from Anglo employees, as well. In particular, Arguello claims Cohenour would discipline Hispanic workers for speaking out or airing disagreements at staff meetings and would accuse them of being insubordinate and unprofessional, but would not respond this way to Anglo workers who engaged in similar conduct.

In February 2001, Arguello alleges that Cohenour directed her to provide services and bill for services already covered under a contract with a local state body. Arguello, concerned with what appeared to be illegal double billing, questioned Cohenour about the matter, only to have Cohenour reprimand her, increase her workload and reduce her supervisory responsibilities.

Arguello then met with Casa de Corazon's staff attorney to discuss the purportedly discriminatory treatment. After this meeting, Arguello alleges Cohenour increased her workload again and issued a number of written reprimands to Arguello.

In April 2001, Arguello filed a complaint alleging discrimination and retaliation with the New Mexico Human Rights Commission (NMHRC).

On May 14 and 15, 2001, Cohenour allegedly held staff meetings in Arguello's absence where she discussed the charges of discrimination. After the meeting, Cohenour placed written reprimands describing unprofessional conduct and failure to complete work assignments in Arguello's personnel file. Cohenour also began to change Arguello's assignments on a daily basis, allegedly to confuse and disrupt Arguello's work performance. Finally, on July 16, 2001, Cohenour gave Arguello a written reprimand listing twenty-five incidents of unprofessional conduct, performance problems and insubordination.

In August 2001, Arguello's physician advised her to take a few weeks leave because work-related stress was causing her health problems.

On August 29, 2001, while Arguello was still on medical leave, investigators for the NMHRC interviewed Casa de Corazon staff members about Arguello's charges of discrimination.

On August 30, 2001, before Arguello had returned to work, she was fired. When Arguello went to the Casa de Corazon offices on August 31, 2001 to request additional medical leave, she was instructed to leave the building.

Arguello filed the instant suit on December 6, 2001 against Casa de Corazon and Margaret Cohenour, claiming that she was subjected to racial discrimination and unlawful retaliation in violation of Title VII, 42 U.S.C. § 1981, and the New Mexico Human Rights Act during the course of her employment. On October 7, 2002, Defendants filed a motion for summary judgment on all Plaintiff's claims, arguing that she had failed to submit proof of essential elements on each count.

## DISCUSSION

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when a court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

**Discrimination claims**

In an employment discrimination case brought under either Title VII or § 1981 where the plaintiff relies on indirect evidence to prove discriminatory intent, analysis of a summary judgment motion is guided by the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 n.4 (10th Cir. 2000) (citing inter alia *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991)). Under the

*McDonnell Douglass* three-part test, first the plaintiff must establish a prima facie case of discrimination. If plaintiff makes the requisite showing, the defendant then has the burden of producing a legitimate, nondiscriminatory reason for her actions. Once the defendant has met this burden, the plaintiff must show that her race was "a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (citing *Kendrick*, 220 F.3d at 1226).

To make a prima facie case of discriminatory discharge, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she was fired despite her qualifications; and (4) the job was not eliminated after her discharge. *Kendrick*, 220 F.3d at 1229. Plaintiff has failed to make a prima facie case because she has not produced any evidence on the second element. Plaintiff has not provided the Court with a job description for the position of Clinical Director and Intake Coordinator or an explanation of how her background as a registered nurse and a licensed social worker meets the requirements of this position. On a motion for summary judgment, "[t]he moving party is 'entitled to a judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. Accordingly, because Plaintiff has failed to establish her prima facie case, Defendants are entitled to summary judgment on her Title VII claim of discrimination (Count I) and her § 1981 claim of discrimination (Count V).

Plaintiff also has alleged racial discrimination in violation of the New Mexico Human Rights Act (Count III). The New Mexico Supreme Court has held that a plaintiff may prove

-5-

unlawful racial discrimination through indirect evidence presented under the *McDonell Douglas* analysis. *See, e.g., Martinez v. Yellow Freight Sys., Inc.,* 826 P.2d 962, 964-65 (N.M. 1992). In *Martinez*, the supreme court held that a plaintiff establishes a prima facie case of discrimination by demonstrating that "(1) that he or she is a member of a protected class; (2) that he or she was qualified to continue employment; (3) that his or her employment was terminated; and (4) that his or her position was filled by someone not in the protected class." *Id.* at 964 (footnote omitted). Because the Court has already concluded that Plaintiff Arguello failed to provide any evidence that she was qualified for her position, Plaintiff's discrimination claim under the New Mexico Human Rights Act must fail for the same reason.

**Retaliation claims**

Defendant has alleged retaliation in violation of Title VII (Count II) and in violation of the New Mexico Human Rights Act (Count IV). The New Mexico Supreme Court has indicated that the elements of a prima facie case for unlawful retaliation under the latter tracks the elements for a comparable Title VII claim. *Gonzales v. N.M. Dep't of Health*, 11 P.3d 550, 557-58 (N.M. 2000). Thus, in both instances, a plaintiff is required to show that (1) she engaged in protected activity in opposition to the alleged discrimination; (2) she was subjected to adverse employment action; and (3) a causal connection exists between her protected activity and the employer's adverse action. *See, e.g., O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001); *Gonzales*, 11 P.3d at 558 (citing *Jeffries v. Kan.*, 147 F.3d 1220, 1231 (10th Cir. 1998). Just as with a claim of discriminatory discharge, once the plaintiff establishes a prima facie case, the burden falls on the defendant to produce a nondiscriminatory reason for the adverse employment action. If the defendant meets this burden, the plaintiff must show that the reason

offered is only pretextual. *See, e.g., O'Neal*, 237 F.3d at 1252; *Gonzales*, 11 P.3d at 557 (citing *McDonnell Douglas*, 411 U.S. at 802-05).

Defendants contend that Plaintiff has not established a prima facie case of retaliation because she has not shown any causal connection between her termination and her protected conduct. "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Garrett*, 305 F.3d at 1221 (quotations and citations omitted). "The standard for proving a prima facie case ... is low," *id.*, such that a plaintiff need only present circumstantial evidence that gives rise to "an inference of unlawful discrimination," *id.* (quotations and citations omitted).

Plaintiff engaged in protected conduct when, some time between February and April 2001, she complained to the Casa de Corazon staff attorney about the alleged racial discrimination and in April 2001, when she filed a complaint with the NMHRC. Although the parties dispute when exactly Cohenour learned that Plaintiff had spoken with their staff attorney about Cohenour's conduct toward Plaintiff, by both accounts, Cohenour knew of Plaintiff's complaints by end of April 2001. Plaintiff contends that she received multiple written reprimands from Cohenour after this time. Defendants ultimately terminated Plaintiff's employment on August 30, 2001 - the day after the NMHRC conducted an on-site investigation into Plaintiff's complaint and while Plaintiff was still on medical leave.

The temporal connection here is sufficient to support an inference of retaliatory motive by Defendants. While Plaintiff was not fired until roughly four months after she had filed a formal NMHRC complaint, the termination did come one day after NMHRC appeared at the Casa de

-7-

Corazon offices to conduct an official inquiry into the complaint. Moreover, as in *Garrett*, Plaintiff here has "presented not only evidence of temporal connections, but [she] has also documented evidence of a marked shift in the attitude[] and treatment of [her] by [her] supervisor[]." *Garrett*, 305 F.3d at 1221 (distinguishing *Murray v. City of Sapulpa*, 45 F.3d 1417 (10th Cir. 1995)). Plaintiff has alleged that Defendant increased her written reprimands of Plaintiff after April 2001. Thus, the Court finds that Plaintiff has established a prima facie case of retaliation by Defendants.

The Defendants' nonretaliatory justification for the termination is that Plaintiff repeatedly failed to perform work required by her supervisor, Cohenour. In particular, Defendants argue that Plaintiff was not meeting billable hour requirements and was not monitoring or following up on cases in conformity with Casa de Corazon policy. Cohenour's deposition testimony indicates that after months of such nonperformance and in light of the detrimental impact Plaintiff's noncooperation was having on staff, she made the decision to fire Plaintiff on or close to August 21, 2001; that is, about one week before the NMHRC inquiry and before Cohenour sent a termination letter to Plaintiff.

Plaintiff disputes that she was not meeting work expectations. In part, she alleges she was surpassing her billable hour requirements. Because resolution of this factual disagreement over whether Plaintiff was satisfying her work requirements is crucial to determining whether Defendants' justification for firing Plaintiff is pretext, summary judgment must be denied on Plaintiff's retaliation claims (Counts II and IV).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and Memorandum in support thereof **[Doc. Nos. 25 & 26]** is **GRANTED** as to Counts I, III, and V of Plaintiff's Complaint, and is **DENIED** as to Counts II and IV of Plaintiff's Complaint.

Dated this 30th day of September, 2003.

```
_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE
```

Attorney for Plaintiff:
Donald G. Gilpin

Attorney for Defendants:
David M. Houliston
Timothy L. White